IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| GREEK HOUSE CHEFS, | ) | Case No. 4:20-cv-231 |
| Plaintiff, | ) | |
| v. | ) | **PETITION AND REQUEST FOR INJUNCTIVE RELIEF** |
| KAPPA SIGMA DELTA PI FRATERNITY, SMU CHAPTER, and BRADLEY THOMPSON, | ) | |
| Defendants. | ) | |

COMES NOW Plaintiff, Greek House Chefs ("GHC"), by and through the undersigned counsel, and for its Petition and Request for Injunctive Relief states as follows:

## SUMMARY

1. Bradley Thompson was employed by GHC to provide culinary service as a head chef. To secure and maintain GHC employment, Thompson agreed to a reasonable covenant not to compete with GHC. A copy of Thompson's electronic Agreement is attached hereto as Exhibit 1. GHC assigned Thompson to work at Kappa Sigma Delta Pi ("Kappa Sigma") fraternity. Kappa Sigma likewise signed a contract with GHC agreeing not to do business with any GHC employees for a year following the termination of the parties' relationship. A copy of Kappa Sigma's Agreement is attached as Exhibit 2. Both Thompson and Kappa Sigma are violating their contracts by continuing to work together, but cutting out GHC. GHC seeks temporary and permanent injunctive relief, among other remedies, to protect against further breaches and tortious interference with contract.

## PARTIES AND JURISDICTION

2. Plaintiff GHC is an Iowa corporation with its principal place of business in Polk County, Iowa.

3. Defendant Thompson is a resident of Texas, and a former employee of GHC.

4. Defendant Kappa Sigma, SMU Chapter, is a fraternal organization incorporated and located in Dallas, Texas.

5. Kappa Sigma and Thompson both agreed to personal jurisdiction in Iowa to contract with GHC.

6. The parties to this case are domiciled in, and citizens of, different states.

7. The amount in controversy exceeds $75,000.

8. Diversity jurisdiction exists in this court.

## FACTS

9. GHC provides culinary services to approximately 130 sororities and fraternities around the country.

10. GHC's business depends on developing and maintaining relationships between its employees and its clients.

11. To protect the relationships GHC develops, the Agreement between Thompson and GHC contained a non-compete provision stating:

> **1. Non-Competition**
>
> During the period of my employment with the Company and for a period of **one (1) year** after the date of termination of my employment with the Company for any reason (the "Restricted Period"), with or without cause, I will not, **anywhere within sixty (60) miles of any location at which I previously worked for the Company**, directly or indirectly, engage in or own or control any interest in or act as an officer, director, or employee of or consultant or adviser to, any firm, corporation, or institution which provides **personal chef, food management, cooking or hosted dining services to, for or within any fraternity, sorority,**

> house, chapter or similar private collegiate residence, in competition with the business of the Company.
>
> **2. Non-Piracy; Non-Interference**
>
> I will not, directly or indirectly, at any time during the Restricted Period, solicit, provide services to, or in any way become employed by **any fraternity, sorority, house, chapter or similar private collegiate residence which is or was a customer of the Company at any time within the preceding twenty-four (24) months**, or (b) seek to induce, bring about, promote, facilitate, encourage, request or advise any customer, supplier or vendor of the Company to terminate, reduce, limit or change their business relationship with the Company or any of its affiliates.
>
> **3. Non-Solicitation or Hire**
>
> During the Restricted Period, I will not recruit or hire any employee of the Company, or otherwise induce any such employee to leave the employment of the Company, to become an employee of or otherwise be associated with me or any company or business with which I am or may become associated.

Exh. 1.

12. Thompson, in executing his Agreement, "agree[d] that (a) the restrictions set forth in this Agreement are reasonable to protect the Company's rights to control its near-permanent business relationships with its customers and vendors, (b) the covenants and obligations set forth herein relate to special, unique and extraordinary matters, (c) a violation of any of the terms of such covenants and obligations will cause the Company irreparable injury for which adequate remedies are not available at law, and (d) in the event of any actual or threatened violation violation [sic] of any provision of this Agreement, the Company shall have the right to seek injunctive and other equitable relief to prevent a breach or threatened breach of this Agreement, in addition to any other existing rights provided in the Agreement or by operation of law, without the requirement of posting bond."

13. Thompson further agreed, "I shall reimburse the Company for all costs, expenses or damages that it incurs as a result of any actual or threatened violation by me of any provision

of this Agreement.  This obligation shall include court costs, litigation expenses, and reasonable attorneys' fees."

14. The Agreement between Kappa Sigma and GHC contained the following terms:

**§8.  Non-Solicitation**

Neither of Vendee nor its agents, representatives or members may, directly or indirectly, hire, cause to be hired, solicit for hire, attempt to induce or entice away, or otherwise suggest to or approach for these purposes any GHC employee at any time during the terms of this Agreement and for an additional period of one year following the termination hereof unless first given advice and specific written consent by GHC.  Vendee acknowledges that GHC has supplied the resources to vet, hire, train and provide all proprietary training modules to its chefs.  Should such solicitation occur, the Vendee agrees to be held liable to and shall pay a sum of $25,000 for each employee to GHC for damages and loss.  Vendee would maintain the rights to the chef(s) after such payments have been made.  It is understood that the restrictions contained herein are responsible and necessary to protect GHC and its legitimate business interest.

Exh. 2.

15. Kappa Sigma agreed that the restrictions in its contract are "necessary to protect GHC and its legitimate business interests."

16. Kappa Sigma agreed to jurisdiction in this Court.

17. Kappa Sigma agreed that the prevailing party in litigation under its agreement with GHC "is entitled to recover reasonable attorneys' fees."

18. On May 17, 2000, Thompson's employment with GHC ended.

19. After Thompson left GHC, Kappa Sigma continued working with Thompson in direct violation of its contract with GHC.

20. GHC suffers of irreparable harm if Thompson and Kappa Sigma are allowed to violate their contracts.

**COUNT I:  BREACH OF CONTRACT**
**(Against Defendant Kappa Sigma)**

21. GHC realleges paragraphs 1 through 20 as though set forth fully herein.

22. GHC has a valid and enforceable Agreement prohibiting Kappa Sigma from doing business with Thompson.

23. GHC fully performed under the Agreement with Kappa Sigma.

24. Kappa Sigma has breached and continues to breach the Agreement by working with Thompson.

25. As a result of Kappa Sigma breaches, GHC has suffered monetary harm in an amount to be proven at trial, and irreparable harm.

WHEREFORE, GHC respectfully requests that the Court enter judgment in its favor, awarding:

i) Temporary and permanent injunctive relief;

ii) Actual damages in an amount to be proven at trial;

iii) The costs of this action;

iv) Reasonable attorneys' fees; and

v) Such other and further relief as the Court deems appropriate.

## COUNT II: BREACH OF CONTRACT
**(Against Defendant Thompson)**

26. GHC realleges paragraphs 1 through 25 as though set forth fully herein.

27. GHC has a valid and enforceable Agreement prohibiting him from doing any business with Kappa Sigma for a year after the end of his employment with GHC.

28. GHC fully performed under the Agreement by, among other things, employing Thompson and providing him with access to clients and client information.

29. Thompson has breached and continues to breach the Agreement by working with Kappa Sigma in violation of his contract.

30. As a result of Thompson's breaches, GHC has suffered monetary harm in an amount to be proven at trial, and irreparable harm.

WHEREFORE, GHC respectfully requests that the Court enter judgment in its favor, awarding:

vi) Temporary and permanent injunctive relief;

vii) Actual damages in an amount to be proven at trial;

viii) The costs of this action;

ix) Reasonable attorneys' fees; and

x) Such other and further relief as the Court deems appropriate.

## COUNT III: TORTIOUS INTERFERENCE WITH CONTRACT
### (Against Kappa Sigma)

31. GHC restates paragraphs 1 through 30 of this Petition as though set forth fully herein.

32. At a minimum, upon receipt of this complaint, Defendant Kappa Sigma knows of Thompson's Agreement with GHC, including the provisions prohibiting Thompson from providing services to Kappa Sigma.

33. To the extent Kappa Sigma continues to employ Thompson's services, Kappa Sigma intentionally and improperly interferes with the Agreement between GHC and Thompson.

34. Defendant Kappa Sigma's continued interference constitutes an ongoing breach of the Agreement.

35. Defendant Kappa Sigma's actions will continue to damage GHC.

36. Defendant Kappa Sigma's actions knowingly and intentionally violate the rights of GHC.

37. Defendant Kappa Sigma's actions are with willful and wanton disregard of the rights of GHC.

38. Defendant Kappa Sigma's actions are causing, and will cause, irreparable harm and damage to GHC.

WHEREFORE, GHC respectfully requests that the Court enter judgment in its favor awarding:

(i) Temporary and permanent injunctive relief;

ii) Actual damages in an amount to be proven at trial;

iii) The costs of this action;

iv) Punitive damages;

v) Reasonable attorneys' fees; and

vi) Such other and further relief as the Court deems appropriate.

### COUNT IV: TORTIOUS INTERFERENCE WITH CONTRACT
**(Against Thompson)**

39. GHC restates paragraphs 1 through 38 of this Petition as though set forth fully herein.

40. At a minimum, upon receipt of this Complaint, Defendant Thompson knows of Kappa Sigma's Agreement with GHC, including the provisions prohibiting Kappa Sigma from accepting Thompson's services.

41. To the extent Thompson continues to provide services to Kappa Sigma, Thompson intentionally and improperly interferes with the Agreement between GHC and Kappa Sigma.

42. Defendant Thompson's continued interference with Sigma's contract constitutes an ongoing breach of the Agreement.

43. Defendant Thompson's actions will continue to damage GHC.

44. Defendant Thompson's actions knowingly and intentionally violate the rights of GHC.

45. Defendant Thompson's actions are with willful and wanton disregard of the rights of GHC.

46. Defendant Thompson's actions are causing, and will cause, irreparable harm and damage to GHC.

WHEREFORE, GHC respectfully requests that the Court enter judgment in its favor awarding:

(i) Temporary and permanent injunctive relief;

ii) Actual damages in an amount to be proven at trial;

iii) The costs of this action;

iv) Punitive damages;

v) Reasonable attorneys' fees; and

vi) Such other and further relief as the Court deems appropriate.

### COUNT V:  TEMPORARY AND PERMANENT INJUNCTIVE RELIEF
**(Against Both Defendants)**

47. GHC restates and realleges paragraphs 1 through 46 of this Petition as though set forth fully herein.

48. The actions of Defendants Thompson and Kappa Sigma have caused, and will continue to cause, irreparable harm to GHC for which monetary damages alone will be an inadequate remedy.

49. Among other things, the actions of Defendants Thompson and Kappa Sigma have damaged, and will continue to damage, GHC's relationships with its customers.  Allowing

Defendants Thompson and Kappa Sigma to breach or tortiously interfere with GHC's Agreement with Thompson is inappropriate, and the balance of harms is substantially greater to GHC.

50. Public policy does not favor allowing employees who signed agreements containing reasonable covenants not to compete to violate those covenants and provide unjustified benefits to a new employer. Public policy does not favor the breach of, or tortious interference with, covenants not to compete and confidentiality agreements.

51. No petition for the same relief or any part thereof has been previously presented to or refused by any court or justice.

WHEREFORE, GHC respectfully requests the Court enter temporary and permanent injunctive relief in its favor against Thompson and Kappa Sigma as follows:

(i) Prohibiting Thompson and Kappa Sigma from directly conducting business with any GHC customer or client;

ii) Prohibiting Thompson and Kappa Sigma from directly or indirectly providing any service or product to any actual or prospective customer or client of GHC;

iii) Enjoining further violations of Thompson's covenant not to compete and confidentiality agreement with GHC;

iv) Requiring disgorgement of all profits earned by Thompson and Kappa Sigma from GHC's current or potential customers or clients;

v) Awarding GHC the costs and reasonable attorneys' fees incurred in this action; and

vi) Awarding all other relief as the Court deems appropriate.

BELIN McCORMICK, P.C.

By /s/ Michael Reck
   Michael Reck                               AT0006573
   Kelsey J. Knowles                   AT0004233
   Mariah L. Slocum                  AT0014103
666 Walnut Street, Suite 2000
Des Moines, IA 50309-3989
Telephone: 515.283.4645; 515.283.4610; 515.283.4644
Facsimile: 515.558.0631; 515.558.0631; 515.558.0644
E-mail: mrreck@belinmccormick.com
kjknowles@belinmccormick.com
mlslocum@belinmccormick.com
ATTORNEYS FOR PLAINTIFF